OPINION
{¶ 1} Defendant-appellant, Frank M. Koval, appeals his conviction in Warren County Court of Common Pleas for engaging in a pattern of corrupt activity and possession of marijuana.
 {¶ 2} Appellant was indicted for the two offenses and for trafficking in marijuana and for possession and trafficking in cocaine, after law enforcement officials were directed to appellant's home, where they found a quantity of marijuana and cocaine. Appellant's case was tried to a jury. The jury received three of the charges to consider after the trial court dismissed the two cocaine charges on appellant's Crim.R. 29 motion for judgment of acquittal.
 {¶ 3} The jury returned a guilty verdict for the offenses of engaging in a pattern of corrupt activity and possession of marijuana, and the trial court later sentenced appellant. Appellant now appeals, presenting nine assignments of error for review.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FAILING TO GRANT APPELLANT'S MOTION TO DISMISS FOR LACK OF VENUE."
 {¶ 6} Appellant asserts in this assignment of error that his home where the drugs were stored is in Butler County and the drug offenses with which he was charged occurred in Butler County; therefore, venue was not proper in Warren County and his Crim.R. 29 motion should have been granted at trial.[1]
 {¶ 7} When reviewing the trial court's denial of a motion for acquittal under Crim.R. 29, this court applies the same test as it would in reviewing a challenge based upon the sufficiency of the evidence to support a conviction. State v. Thomas, Warren App. No. CA2005-07-085, 2006-Ohio-3901, ¶ 9.
 {¶ 8} In resolving the sufficiency of the evidence argument, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of syllabus; Thomas.
 {¶ 9} The purpose of the venue requirement is to give the defendant the right to be tried in the vicinity of the alleged criminal activity, and to limit the state from indiscriminately seeking a favorable location for trial that might be an inconvenience or disadvantage to the defendant. State v.Rankin, Clinton App. No. CA2004-06-015, 2005-Ohio-6165, ¶ 11.
 {¶ 10} Venue is not a material element of the offense charged, but is a fact that must be proved in criminal prosecutions, unless it is waived by the defendant. State v.Headley (1983), 6 Ohio St.3d 475, 477. "The standard of proof is beyond a reasonable doubt, although venue need not be proved in express terms so long as it is established by all the facts and circumstances in the case." Id.; Rankin.
 {¶ 11} The state presented evidence at trial that Adam Danner, who lived in Warren County, operated a drug business involving the street sale of marijuana and cocaine. As part of the business, Danner received shipments of cocaine and marijuana from other states, purportedly retrieving these shipments from drop-off locations predominately in Warren County. According to Danner, he and appellant agreed that Danner would take these drug shipments to appellant's home in Butler County for storage until the drugs were prepared and sold.
 {¶ 12} Danner testified that he had free access to appellant's home to drop off the drug shipments and that appellant assisted in "breaking down" and packaging some of the marijuana for sale. Danner indicated that he eventually sold the cocaine and marijuana in the area, which included Butler and Warren counties. Evidence was presented that Danner stored sums of cash at appellant's home and in a safety deposit box listed in the name of appellant and his wife. Danner testified that appellant was given some of the cocaine for his personal use in exchange for his assistance to Danner.[2]
 {¶ 13} According to the venue statute, R.C. 2901.12, the "trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." R.C. 2901.12(A).
 {¶ 14} R.C. 2901.12(H) states: "When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:
 {¶ 15} "(1) The offenses involved the same victim, or victims of the same type or from the same group.
 {¶ 16} "(2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.
 {¶ 17} "(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.
 {¶ 18} "(4) The offenses were committed in furtherance of the same conspiracy.
 {¶ 19} "(5) The offenses involved the same or a similar modus operandi.
 {¶ 20} "(6) The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination."
 {¶ 21} Appellant was charged with engaging in a pattern of corrupt activity and possession and trafficking charges. With the offense of engaging in a pattern of corrupt activity, the state was alleging that, through a pattern of corrupt activity, appellant directly or indirectly acquired or maintained an interest in or control of the drug enterprise that took place in Warren and Butler counties. See R.C. 2923.32(A)(2); see, also, R.C. 2923.31(E) ("pattern of corrupt activity" is present when there are two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event); see R.C. 2923.31(I) ("corrupt activity" means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any of the following, as applicable here: trafficking or possession of drugs when the value of the contraband or property possessed or sold exceeds $500); see R.C.2923.31(C) ("enterprise" includes any individual, sole proprietorship, partnership or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity).
 {¶ 22} The state alleged that the drugs, which were found in appellant's house and upon which the possession and trafficking charges were based, were brought in and stored for eventual sale through the drug business.
 {¶ 23} Consequently, evidence was presented at trial that the drug business or enterprise existed in and was conducted, in part, in Warren County. Therefore, at least one element of the offense of engaging in a pattern of corrupt activity took place in Warren County. C.f. State v. Haddix (1993),93 Ohio App. 3d 470 (venue for prosecution for engaging in corrupt activity proper in any county where portion of corrupt activity occurred or where organization based).
 {¶ 24} In addition, evidence was presented that the corrupt activity and drug offenses were committed as a course of conduct, i.e., they involved the same modus operandi, were committed by appellant in the same capacity or relationship, and were committed in furtherance of the same purpose or objective. See R.C. 2901.12(H).
 {¶ 25} We find that venue in Warren County was appropriate on the corrupt activity charge and on all charges within appellant's course of criminal conduct. See State v. Griffin (1991),62 Ohio App.3d 396, 400-402; see State v. Rankin, 2005-Ohio-6165
at ¶ 23. Reviewing this issue under the applicable standard of review, we find that a rational jury could have found sufficient evidence of venue in Warren County, and the trial court did not err in overruling appellant's Crim.R. 29 motion. Appellant's first assignment of error is overruled.
 {¶ 26} Appellant sets forth the following four assignments of error, which focus on specific challenges to the indictment and the process to secure the indictment. Appellant's arguments center on two counts in the indictment and a third count is included in the fifth assigned error. Appellant asks this court to dismiss the entire indictment as the remedy for the alleged errors. For the reasons outlined and discussed separately below, we decline appellant's request.
 {¶ 27} Assignment of Error No. 2:
 {¶ 28} "THE TRIAL COURT ERRED IN REFUSING TO DISMISS THIS CASE DUE TO AN IMPROPER INDICTMENT."
 {¶ 29} Appellant argues that his indictment was defective because it was not signed by the grand jury foreperson, and therefore, there is no evidence that the indictment containing the language of the applicable statutes was reviewed by the grand jury.
 {¶ 30} The indictment in the instant case consisted of five counts. Each count, and the statutory language of the applicable count, was printed on a separate sheet of paper. The sixth sheet of paper listed the five statutes involved in the multiple-count indictment, included the signature of the grand jury foreperson under the notation of "True Bill" and a certification by the clerk of courts.[3]
 {¶ 31} A multiple-count indictment containing the words, "a true bill" and signed by the grand jury foreperson is sufficient when the entire document is provided to the defendant, notwithstanding that each count of the indictment is not separately signed by the foreperson. State v. Ballow (July 3, 1996), Medina App. No. 2527-M, motion for delayed appeal denied,78 Ohio St.3d 1427, 1997-Ohio-634 (where multiple counts are set forth in a single indictment, Ohio law does not require that each count of an indictment be signed).
 {¶ 32} While the signature of the grand jury foreperson on each page of the multiple-count indictment would dispel any such questions, we overrule appellant's second assignment of error for the reason that appellant's multiple-count indictment was signed by the grand jury foreperson, indicating the grand jury's decision. See, e.g., Crim.R. 6; Crim.R. 7.
 {¶ 33} Assignment of Error No. 3:
 {¶ 34} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FAILING TO GRANT APPELLANT'S MOTION TO DISMISS THE INDICTMENTS[.]"
 {¶ 35} In this assignment of error, appellant specifically challenges the trafficking in cocaine count of the indictment, and later adds the possession of cocaine charge, arguing that neither count was supported by the evidence before the grand jury.
 {¶ 36} Appellant cited the transcript of the grand jury testimony of Adam Danner and a copy of a police interview conducted with Danner as the basis for his assertion that the trafficking and possession of cocaine charges were not supported by any evidence presented to the grand jury and, therefore, the grand jury could not have properly returned an indictment containing those two counts.
 {¶ 37} We approach appellant's argument here and those that follow cognizant that the cocaine counts, of which appellant now complains, were dismissed by the trial court when it ruled upon appellant's Crim.R. 29 motion for acquittal at the end of the state's case. See, e.g., State v. Ludwick, Ashtabula App. No. 2002-A-0024, 2004-Ohio-1152, ¶ 52 (where defendant was found not guilty on one count of the indictment, appeals court, therefore, focused its review instead on the trial court's refusal to dismiss a separate count of the indictment).
 {¶ 38} Appellant was granted the dismissal he sought on the cocaine charges at trial. Therefore, we are left to interpret appellant's assignment of error as a challenge to the trial court's failure to dismiss these counts upon his pretrial motion to dismiss the indictment.
 {¶ 39} A pretrial motion to dismiss in the criminal context can only raise matters that are capable of determination without a trial of the general issue. Crim.R. 12(C); State v. O'Neal
(1996), 114 Ohio App.3d 335, 336.
 {¶ 40} Such a motion only challenges the sufficiency of the charging instrument and whether the allegations contained therein are sufficient to make out a criminal offense "without regard to the quantity or quality of evidence that may be produced by either the state or the defendant." State v. Patterson (1989),63 Ohio App.3d 91, 95 ("it is premature to determine, in advance of trial, whether the state could satisfy its burden of proof with respect to those charges").
 {¶ 41} The validity of an indictment is not affected by the character of the evidence considered and an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence.State v. Davis, (1988), 38 Ohio St.3d 361, 365, citing U.S. v.Calandra (1974), 414 U.S. 338, 94 S.Ct. 613; see, also, Statev. Tipton (1999), 135 Ohio App.3d 227, 228-229, appeal not allowed, 88 Ohio St.3d 1416, 2000-Ohio-2751 ("when a defendant in a criminal action files a motion to dismiss that goes beyond the face of the indictment, he is, essentially, moving for summary judgment," which is not permitted under the Ohio Rules of Criminal Procedure; since defendant went beyond face of indictment, he could only challenge with motion for acquittal at close of state's case).
 {¶ 42} The trial court properly denied appellant's pretrial motion on the sufficiency of the evidence for the counts of cocaine possession and cocaine trafficking. Thereafter, appellant successfully challenged the sufficiency of the evidence for the cocaine charges by a Crim. R. 29 motion at the close of the state's case. Appellant's third assignment of error is overruled.
 {¶ 43} Assignment of Error No. 4:
 {¶ 44} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FAILING TO GRANT APPELLANT'S MOTION TO DISMISS THE INDICTMENTS FOR PROSECUTORIAL MISCONDUCT."
 {¶ 45} Appellant continues his challenge concerning the two cocaine charges, incorporating previous assigned errors and arguing that the prosecutor knew there was no evidence to pursue cocaine charges and, therefore, committed prosecutorial misconduct in securing those counts of the indictment.
 {¶ 46} The standard of review on a claim of prosecutorial misconduct requires a determination of whether the prosecutor's misconduct may have been so egregious that the defendant was denied the fundamental right to a fair trial. State v. Iocona,93 Ohio St.3d 83, 104, 2001-Ohio-1292.
 {¶ 47} Appellant asserts that forcing him to trial on the cocaine charges "violate[d] [his] right to a fair trial and prejudice[d] him." Appellant does not inform this court specifically how he was prejudiced and how his right to a fair trial was impinged in this manner. As we previously noted, these two charges were dismissed during trial and not given to the jury.
 {¶ 48} Appellant's argument involves mere speculation that the prosecutor must have engaged in a form of misconduct to secure the cocaine charges from the grand jury. We are not inclined to indulge such speculation, and, do not find any prejudice to appellant in that regard. The trial court did not err in its decision to reject appellant's motion on this issue. Appellant's fourth assignment of error is overruled.
 {¶ 49} Assignment of Error No. 5:
 {¶ 50} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN REFUSING APPELLANT'S MOTION TO TURN OVER GRAND JURY MINUTES."
 {¶ 51} Appellant incorporates the previous assigned errors for his argument in this fifth assignment of error. Specifically, appellant argues that the trial court should have provided the grand jury minutes because no competent evidence was presented at the grand jury on the cocaine charges and the trafficking in marijuana charge. Therefore, appellant argues, the prosecutor engaged in misconduct in securing charges with no evidence and the grand jury minutes should have been provided to him.[4]
 {¶ 52} Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the accused that a particularized need for disclosure exists that outweighs the need for secrecy. State v. Davis,38 Ohio St.3d at 365; State v. Coley, 93 Ohio St.3d 253, 261,2001-Ohio-1340. A "particularized need" is when the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the defendant a fair trial. Davis. The particularized need for disclosure of grand jury proceedings is a determination within the sound discretion of the trial court.Coley.
 {¶ 53} We previously found no merit to appellant's preceding arguments regarding the grand jury process. We likewise find that appellant failed to show a particularized need for the grand jury minutes. The trial court did not abuse its discretion when it refused to provide the minutes and that decision did not deprive appellant of a fair trial. See State v. Davis,38 Ohio St.3d at 365 (citing to U.S. Supreme Court [citation omitted], court held that defendant failed to demonstrate particularized need for grand jury minutes where defendant argued that indictment was not based on probable cause and was founded on illegal and incompetent evidence). Appellant's fifth assignment of error is overruled.
 {¶ 54} We will combine appellant's sixth and seventh assignments of error for review and discussion.
 {¶ 55} Assignment of Error No. 6:
 {¶ 56} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN OVERRULING THE MOTION OF APPELLANT FOR JUDGMENT OF ACQUITTAL OF THE DEFENDANT-APPELLANT AT THE CLOSE OF THE STATE'S CASE, AT THE CONCLUSION OF ALL THE EVIDENCE AND AFTER ENTRY OF THE VERDICT, AS TO COUNT ONE OF THE INDICTMENT."
 {¶ 57} Assignment of Error No. 7:
 {¶ 58} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ADMITTING IMPROPER TESTIMONY OF DRUG EVIDENCE."
 {¶ 59} With these two assignments of error, appellant argues that the charge of engaging in corrupt activity should have been dismissed because the state failed to present any evidence of previous drugs, by testing or otherwise, to meet the definition of a "pattern of corrupt activity," namely, "two or more incidents of corrupt activity * * * not so isolated, * * * and not so closely related to each other and connected in time and place that they constitute a single event." Appellant asserts that the state failed to produce the "corpus delecti" to prove that the two or more incidents of corrupt activity for which appellant was accused involved drugs.
 {¶ 60} Corpus delecti is the body or substance of the crime, which includes the act and the criminal agency of the act. Statev. Edinger, Franklin App. No. 05AP-31, 2006-Ohio-1527, ¶ 25, citing State v. Maranda (1916), 94 Ohio St. 364, syllabus.
 {¶ 61} The state may rely upon circumstantial evidence in proving that a crime was committed. Maranda, at 371. In this case, appellant challenges the state's reliance on circumstantial evidence that appellant committed two or more incidents of corrupt activity when no testing was performed on the previous shipments of drugs that were allegedly stored in appellant's house.
 {¶ 62} A layperson can provide opinion testimony regarding the identity of controlled substances provided the opinion is based upon a sufficient foundation of experience and knowledge of the substance at issue. State v. Foti, Lake App. No. 2001-L-020, 2003-Ohio-796, ¶ 51, appeal not allowed by104 Ohio St.3d 1427, 2004-Ohio-6585.
 {¶ 63} The Foti holding is based upon the Ohio Supreme Court decision in State v. McKee, 91 Ohio St.3d 292,2001-Ohio-41, which held that "the experience and knowledge of a drug user lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established." Id., at 297; see, also, State v. Miles, Defiance App. No. 4-02-28, 2003-Ohio-1370 (experienced crack cocaine user could testify that defendant's previous sales to her involved crack cocaine based upon the effects of taking the drug and the fact that it looked substantially similar to last drug purchase, which was tested and found to be crack cocaine); State v. Singleton, Lake App. No. 2002-L-077, 2004-Ohio-1517, ¶ 22 (relying upon lay testimony of experienced drug users, court held that state is not required to present expert scientific testimony to establish that a substance is in fact a controlled substance).
 {¶ 64} Scientific testing of purportedly illegal substances constitutes prima facie evidence of the content, identity, and weight of the substances. See R.C. 2925.51. However, illegal drugs will often be unavailable for scientific analysis because, by their nature, they are sold or consumed. See U.S. v. Schrock
(C.A.6, 1988), 855 F.2d 327, 334 (so long as the government produces sufficient evidence, direct or circumstantial, from which the jury is able to identify the substance beyond a reasonable doubt, the lack of scientific evidence is not objectionable).
 {¶ 65} In the case at bar, Danner told the jury that he had been selling drugs to appellant and his wife for a year or so before they all agreed that appellant's home would be used for the storage of monthly shipments of drugs Danner received from out of state.
 {¶ 66} For nearly a year after the agreement was made, Danner indicated that he received and handled numerous shipments of cocaine and marijuana, breaking up the drugs into individual containers for distribution. Some of the preparation of marijuana took place with appellant's assistance. Danner testified that he was aware that appellant was a user of cocaine and Danner often paid appellant in cocaine from these shipments. In addition, law enforcement recovered large amounts of cash that the jury could infer were proceeds from satisfied customers of the drug business. Danner acknowledged that he took several measures to hide the nature, product, and proceeds of this particular business from the general public.
 {¶ 67} Law enforcement authorities testified that Danner, when confronted by law enforcement, told them that appellant was storing a quantity of drugs. Danner's information was confirmed when law enforcement authorities arrived at appellant's home and appellant led them into his basement and identified separate quantities of marijuana stored there.
 {¶ 68} Danner testified that the marijuana found in appellant's basement during the police search included marijuana from separate shipments. In the basement was bulk marijuana from the July shipment Danner had just brought to the house, and marijuana from a previous shipment that had been prepared for sale in separate baggies, but which Danner thought was poor quality and intended to return to his source.
 {¶ 69} The record indicates that all of the marijuana and cocaine found by law enforcement in appellant's basement in July 2004 was tested and a laboratory analyst identified the vegetation as marijuana and the other substance as cocaine.
 {¶ 70} We note that a trial court has sound discretion in deciding whether to admit evidence, and its decision will not be reversed on appeal absent an abuse of discretion. State v. Sage
(1987), 31 Ohio St.3d 173, 180.
 {¶ 71} The trial court in the case at bar permitted Danner to testify that he brought several shipments of illegal drugs into appellant's home for storage and those drugs were marijuana and cocaine. Based upon Danner's reported experience in the handling and sale of these drugs, we cannot say that the trial court abused its discretion in permitting the admission of that testimony to show two or more incidents of corrupt activity. SeeState v. Foti, 2003-Ohio-796, ¶ 51; c.f. State v. Baker,
Hardin App. No. 6-03-11, 2004-Ohio-2061, ¶ 23 (considering the evidence of the previous drug sales made by defendant in 2001 together with the evidence adduced at trial concerning the events of May 3, 2002, rational trier of fact could have found defendant's involvement in the several transactions was sufficient proof of his involvement in an enterprise and a pattern of corrupt activity).
 {¶ 72} After reviewing the record under the applicable standard for a sufficiency challenge, we find that a rational jury could have found that the state proved beyond a reasonable doubt all of the requisite elements of the offense of engaging in a pattern of corrupt activity, including those elements specifically challenged by appellant.
 {¶ 73} Appellant also argues that his conviction for engaging in a pattern of corrupt activity was contrary to the manifest weight of the evidence. Appellant specifically argues that his actions were those of an individual seeking to sustain his cocaine habit and the state failed to show that appellant engaged in a pattern of corrupt activity by acquiring or maintaining an interest in the drug enterprise.
 {¶ 74} A court considering whether a conviction was against the manifest weight of the evidence must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of witnesses. State v. Hancock,108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39. The question is "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also, State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 75} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting Martin. A unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required to reverse a judgment of a trial court on the weight of the evidence in a jury trial.Thompkins at 389.
 {¶ 76} As we previously noted, R.C. 2923.32(A)(2), with which appellant was charged, states that no person, through a pattern of corrupt activity or collection of an unlawful debt, shall acquire or maintain, directly or indirectly, any interest in, or control of, any enterprise or real property.
 {¶ 77} Engaging in a pattern of corrupt activity does not require that a profit be made from the enterprise, rather, it requires that two or more persons associate for the purpose of engaging in corrupt activities. State v. Mendenhall, Hardin App. No. 6-04-11, 2005-Ohio-3604, ¶ 18.
 {¶ 78} We are mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 79} We have previously discussed most of the evidence presented by the state involving appellant's conduct in relation to the receipt, storage, and preparation of numerous shipments of drugs. The state also presented testimony from bank officers who testified that law enforcement authorities opened a safe deposit box in the name of appellant and his wife and provided a cashier's check to the Warren-Clinton Drug Task Force in the amount of $71,680, which was the amount of money found in the box. Danner had previously testified that he had an agreement with appellant and his wife that he could place money he was earning in the box and appellant's wife made those deposits for him because she worked at the bank.
 {¶ 80} Appellant presented the theory during cross-examination of other witnesses that he had no interest in the drug business, that Danner alone possessed the drugs and was the only person reaping any benefits from the drug business, and that Danner took advantage of appellant's cocaine addiction.
 {¶ 81} By its verdict, the jury rejected appellant's argument, finding that appellant acquired or maintained, directly or indirectly, an interest in or control of, the enterprise or real estate. Evidence was presented whereby the jury could find that appellant had an interest in and direct role with this enterprise. The jury clearly did not lose its way and create such a manifest miscarriage of justice that the conviction should be reversed and a new trial ordered. Appellant's sixth and seventh assignments of error are overruled.
 {¶ 82} Assignment of Error No. 8:
 {¶ 83} "THE TRIAL COURT ERRED IN REFUSING TO GIVE DEFENDANT'S REQUESTED JURY INSTRUCTIONS."
 {¶ 84} Appellant argues that the trial court erred in refusing to instruct the jury on the offense of permitting drug abuse as a lesser offense of the indicted offense of possession of marijuana.
 {¶ 85} The record indicates that appellant asked the court to give a jury instruction on R.C. 2925.13(B), which states: "No person who is the owner, lessee, or occupant, or who has custody, control, or supervision, of premises or real estate, * * * shall knowingly permit the premises or real estate * * * to be used for the commission of a felony drug abuse offense by another person."
 {¶ 86} There are three groups of lesser offenses on which the jury must be instructed when supported by the evidence at trial: (1) attempts to commit the crime charged, which is not applicable in the case at bar; (2) inferior degrees of the indicted offense, which appellant alleges here; and (3) lesser included offenses.State v. Eldridge, Brown App. No. CA2002-10021, 2003-Ohio-7002, ¶ 20, citing to State v. Deem (1988), 40 Ohio St.3d 205, paragraph one of the syllabus; see, generally, R.C. 2945.74 and Crim. R. 31.
 {¶ 87} Lesser or Inferior degrees of the indicted offense occur where the elements of the lesser offense are identical to or contained within the indicted offense, except for one or more additional mitigating elements in the lesser offense. Deem,
paragraph two of the syllabus; Eldridge, at ¶ 21.
 {¶ 88} A jury instruction on the lesser offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser offense. Deem, at 207-209; State v. Shane
(1992), 63 Ohio St.3d 630, 632-633.
 {¶ 89} Drug possession requires that a person knowingly obtain, possess, or use a controlled substance. R.C. 2925.11. A person acts "knowingly," when, regardless of his purpose, he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. R.C. 2901.22(B).
 {¶ 90} "Possess" or "Possession" means having control over a thing or substance, but may not be inferred solely from mere access to the substance or through ownership or occupation of the premises upon which the substance is found. R.C. 2925.01(K).
 {¶ 91} The accused may be in actual or constructive possession or control of the drug. State v. Contreras, Butler App. No. CA2004-07-181, 2006-Ohio-1894, ¶ 21. Constructive possession exists when one is conscious of the presence of the object and able to exercise dominion and control over it, even if it is not within one's immediate physical possession. State v.Gaefe, Clinton App. No. CA2001-11-043, 2002-Ohio 4995, at ¶ 9. The discovery of readily accessible drugs in close proximity to a person constitutes circumstantial evidence that the person was in constructive possession of the drugs. Contreras, at ¶ 24.
 {¶ 92} The elements of permitting drug abuse, with mitigating elements, are not identical to or contained within the offense of possession of marijuana. The possession of marijuana charge required a finding that appellant knowingly obtained, possessed, or used the drug. Permitting drug abuse required the jury to find that appellant allowed his real property to be used for the commission of a felony drug abuse offense by another person
(emphasis added). Evidence was presented from which the jury could find that appellant knowingly possessed the marijuana.
 {¶ 93} Accordingly, we find that the trial court was not required to give the requested jury instruction. Further, the trial court did not abuse its discretion when it chose not to give the instruction and denied appellant's request.[5] SeeState v. Wolons (1989), 44 Ohio St.3d 64, 68 (trial court's refusal to give jury instruction is reviewed under abuse of discretion standard). Appellant's eighth assignment of error is overruled.
 {¶ 94} Assignment of Error No. 9:
 {¶ 95} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN PERMITTING THE SATE [SIC] THROUGH ADAM DANNER, TO PUT ON EVIDENCE OF UNSUBSTANTIATED AND UNCORROBORATED BAD ACTS."
 {¶ 96} Under this assignment of error, appellant argues that he was prejudiced by the introduction into evidence of his and his wife's alleged prior bad acts, which were not proven and were offered to impermissibly show bad character, contrary to Evid.R. 404 and Evid.R. 403.[6]
 {¶ 97} Evidence of other crimes, wrongs, or acts is not admissible to prove character of the defendant to show that he acted in conformity therewith, but may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. Evid.R. 404(B). Even if the evidence is deemed relevant, it is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury. Evid.R. 403(A).
 {¶ 98} Appellant alleges error in the introduction of evidence on any matters that took place prior to the sequence of events that occurred on July 5 and July 6, 2004. We presume appellant is referring to evidence regarding previous drug shipments and evidence concerning drug use and discovered sums of cash.
 {¶ 99} When other act testimony is relevant to prove a pattern of corrupt activity, it is not inadmissible under Evid.R. 404(B). State v. Frato (Sept. 16, 1992), Lorain App. Nos. 91CA005237, 91CA005238, jurisdictional motion overruled,66 Ohio St.3d 1402; State v. Saxton, Lorain App. Nos. 02CA008029, 02CA008030, 2003-Ohio-3158, ¶ 28-29, appeal not allowed,100 Ohio St.3d 1432, 2003-Ohio-5396; c.f. United States v. Mills
(C.A.11, 1983), 704 F.2d 1553, 1559 (admission of other wrongful circumstances with which the crime charged is inextricably entwined may be necessary in order to complete the story of the crime on trial).
 {¶ 100} The state was required to prove that appellant engaged in a pattern of corrupt activity, i.e., engaged in two or more incidents of corrupt activity that were related to the affairs of the same enterprise, were not isolated, and were not so closely related to each other and connected in time and place that they constituted a single event. See R.C. 2923.31; R.C.2923.32.
 {¶ 101} The state presented evidence that before July 2004, monthly shipments of drugs were brought to appellant's house for storage by agreement with appellant. Evidence was presented that the drugs were stored in appellant's home before they were prepared for distribution and sold, with some of the preparation performed by appellant. The state presented evidence that large sums of cash belonging to Danner were found in appellant's home and in a safe deposit box listed under the names of appellant and his wife. Evidence was presented that, before July 2004, appellant was paid for his services with cocaine from the drug business.
 {¶ 102} Evidence of these aforementioned acts illustrate that the charged conduct was not an isolated event, nor a single event, but a pattern of corrupt conduct. The admission of this evidence was proper for this purpose, and the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. See Evid.R. 403. The trial court did not abuse its discretion in permitting the admission of this evidence. SeeState v. Sage, 31 Ohio St.3d at 180.
 {¶ 103} Appellant's ninth assignment of error is overruled.
 {¶ 104} Judgment affirmed.
Walsh and Young, JJ., concur.
[1] Appellant notes that he also filed a pretrial motion to dismiss the charges for improper venue. However, proper venue cannot be determined without a trial on the issue. State v.Simpson, Summit App. No. 21475, 2004-Ohio-602, ¶ 73, appeal not allowed, 102 Ohio St.3d 1473, 2004-Ohio-2830. A "defendant may only challenge venue prior to trial if it equates to an actual defect in the indictment-for example, if the indictment failed to allege venue." Id.; see Crim.R. 12(C)(2).
[2] Danner testified that he paid appellant for his services mostly with an "eight ball" of cocaine, which he described as weighing 3.5 grams, worth $150 to $200, and did so varying from once or twice to three or four times a week.
[3] We note that the multiple pages did not contain the notation "1 of 5" and "2 of 5," etc., which would ensure consideration as a cohesive multiple-page document.
[4] We note that appellant did have a transcript of Danner's grand jury testimony available for his review pursuant to Crim. R. 16 discovery rules.
[5] The Supreme Court in Deem noted that a fourth group of "lesser" offenses also exists, which are completed offenses of a lesser degree for which the defendant was not indicted and that are neither necessarily included within the indicted offense nor identical to the indicted offense save for an additional mitigating element. Deem at 209, fn. 2. "An instruction on this fourth group of lesser offenses, due to their absence from R.C.2945.74 and Crim.R. 31(C), may not be given to the jury." Id.
[6] We previously addressed appellant's arguments alleging the lack of proof on the identity of drugs from the previous shipments.